# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| KATHLEEN DRU MEYERS, | CASE NO. 4:14-cv-00548-GBC |
| Plaintiff, | (MAGISTRATE JUDGE COHN) |
| v. | |
| CAROLYN W. COLVIN, COMMISSIONER OF SOCIAL SECURITY, | MEMORANDUM |
| Defendant. | Docs. 1, 6, 7, 8, 9 |

## **MEMORANDUM**

### I.  Procedural Background

On August 30, 2010, Plaintiff filed an application for disability insurance benefits ("DIB") and supplemental security income ("SSI") under the Social Security Act, 42 U.S.C. §§401-433, 1382-1383 (the "Act"). (Tr. 172-78). On October 18, 2010, the Bureau of Disability Determination denied this application (Tr. 69-81), and Plaintiff filed a request for a hearing on December 23, 2010. (Tr. 82-84). On February 23, 2012, an ALJ held a hearing at which Plaintiff—who was represented by an attorney—and a vocational expert ("VE") appeared and testified. (Tr. 39-68). On April 20, 2012, the ALJ found that Plaintiff was not disabled and not entitled to benefits. (Tr. 21-38). On June 5, 2012, Plaintiff filed a request for review with the Appeals Council (Tr. 18-20), which the Appeals denied on January 24, 2014, thereby affirming the decision of the ALJ as the "final decision" of the

Commissioner. (Tr. 1-8).

On March 24, 2014, Plaintiff filed the above-captioned action pursuant to 42 U.S.C. § 405(g) to appeal the decision of the Commissioner. (Doc. 1). On May 21, 2014, the Commissioner filed an answer and administrative transcript of proceedings. (Docs. 6, 7). On June 24, 2014, Plaintiff filed a brief in support of her appeal ("Pl. Brief"). (Doc. 8). On July 23, Defendant filed a brief in response ("Def. Brief"). (Doc. 9). On December 5, 2014, the parties consented to transfer of this case to the undersigned for adjudication. (Doc. 12, 13). The matter is now ripe for review.

## II.     Standard of Review

When reviewing the denial of disability benefits, the Court must determine whether substantial evidence supports the denial. *Johnson v. Comm'r of Soc. Sec.*, 529 F.3d 198, 200 (3d Cir. 2008); *Brown v. Bowen*, 845 F.2d 1211, 1213 (3d Cir. 1988). Substantial evidence is a deferential standard of review. *See Jones v. Barnhart*, 364 F.3d 501, 503 (3d Cir. 2004). Substantial evidence "does not mean a large or considerable amount of evidence, but rather 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Pierce v. Underwood*, 487 U.S. 552, 565 (1988) (quoting *Consol. Edison Co. of New York v. N.L.R.B.*, 305 U.S. 197, 229 (1938)). In other words, substantial evidence requires "more than a mere scintilla" but is "less than a preponderance." *Jesurum v. Sec'y*

*of U.S. Dep't of Health & Human Servs.*, 48 F.3d 114, 117 (3d Cir. 1995) (citing *Richardson v. Perales*, 402 U.S. 389, 401 (1971)).

### III.     Sequential Evaluation Process

To receive disability or supplemental security benefits, a claimant must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); 42 U.S.C. § 1382c(a)(3)(A). The Act requires that a claimant for disability benefits show that he has a physical or mental impairment of such a severity that:

> He is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 423(d)(2)(A); 42 U.S.C. § 1382c(a)(3)(B).

The Commissioner uses a five-step evaluation process to determine if a person is eligible for disability benefits. *See* 20 C.F.R. § 404.1520; *see also Plummer v. Apfel*, 186 F.3d 422, 428 (3d Cir. 1999). If the Commissioner finds that a Plaintiff is disabled or not disabled at any point in the sequence, review does not proceed. *See* 20 C.F.R. § 404.1520.   The Commissioner must sequentially determine: (1) whether the claimant is engaged in substantial gainful activity; (2)

whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals a listed impairment from 20 C.F.R. Part 404, Subpart P, Appendix 1 ("Listing"); (4) whether the claimant's impairment prevents the claimant from doing past relevant work; and (5) whether the claimant's impairment prevents the claimant from doing any other work. *See* 20 C.F.R. §§ 404.1520, 416.920. Before moving on to step four in this process, the ALJ must also determine Plaintiff's residual functional capacity ("RFC").  20 C.F.R. §§ 404.1520(e), 416.920(e).

The disability determination involves shifting burdens of proof. The claimant bears the burden of proof at steps one through four.  If the claimant satisfies this burden, then the Commissioner must show at step five that jobs exist in the national economy that a person with the claimant's abilities, age, education, and work experience can perform. *Mason v. Shalala*, 994 F.2d 1058, 1064 (3d Cir. 1993). The ultimate burden of proving disability within the meaning of the Act lies with the claimant. *See* 42 U.S.C. § 423(d)(5)(A); 20 C.F.R. § 416.912(a).

## IV. Relevant Facts in the Record

Plaintiff was born on October 22, 1960, and was classified by the Regulations as a person closely approaching advanced age through the date of the ALJ decision. (Tr. 44). 20 C.F.R. § 404.1563. Plaintiff has at least at least a high school education and past relevant work as a housekeeper. (Tr. 44).

### A. Medical Records before the ALJ

Plaintiff asserts disability as a result of chronic hepatitis C, right hip osteoarthritis post open reduction and internal fixation acetabular, right hip greater trochanteric bursitis, depression, bipolar disorder, polysubstance abuse, alcohol dependence, migraines, cervicalgia, gastroparesis with accompanying vomiting and fatigue, severe osteoporosis, anxiety, panic attacks, post traumatic stress disorder, chronic obstructive pulmonary disease ("COPD"), and recurrent pneumonia. (Pl. Brief at 2-3).

The ALJ reviewed a limited range of medical records. These records show that Plaintiff had an inpatient hospitalization at the Meadows Psychiatric Center from July 31, 2010 to August 12, 2010. (Tr. 391-95). Plaintiff medications were adjusted and on discharge she was doing "well." (Tr. 394). Plaintiff was also evaluated for her mental impairments at Universal Community Behavioral Health on August 16, 2010. (Tr. 280-91). The transcript also contains records from an April 2009 emergency room visit, eighty-seven pages of records from Geisinger Medical Center, and seven pages of orthopedic examinations and X-rays. (Tr. 263-73, 296-389).

### B. Medical Records that were not before the ALJ

Plaintiff was treated at Mt. Nittany Medical Center from January 27, 2011 through 2012. (Tr. 465-658). She was treated for left thoracic pain, a frontal

headache, finger numbness and tingling, left knee pain after a fall, right ankle pain resulting from a fall as she tried to turn off her lights, right leg pain after missing a step and falling while carrying her granddaughter, and a cough. (Tr. 465, 470-71, 482, 499, 511, 526, 583, 957). Plaintiff was diagnosed with myofascial pain, nonunion of rib number 9, Tegretol intoxicity, knee pain, and pneumonia. (Tr. 466, 470, 502, 585). Plaintiff was treated with nerve block injections, physical therapy, medication, and an electrode nerve stimulator unit for home use. (Tr. 466, 468). In August 2011, Plaintiff was instructed to avoid weight bearing. (Tr. 502).

In March, June, September 2011, Dr. Martin administered injections in Plaintiff's right hip (Tr. 928-30). In January, March, and June 2012, Plaintiff complained of right hip and leg pain (Tr. 919-23). Dr. Martin administered injections and told Plaintiff to weight bear as tolerated (Tr. 919-23).

Plaintiff also received subsequent treatment for chronic hepatitis C (Tr. 704-755, 937-1010, 1050-1063), right hip osteoarthritis post open reduction and internal fixation acetabular (Tr. 704-755, 937-1010, 1050-63), gastroparesis with accompanying vomiting and fatigue (Tr. 658, 659-703, 864-91 93 1010), severe osteoporosis (Tr. at 455-658, 756-812), anxiety, panic attacks (Tr.756-812, 1050-1063), chronic obstructive pulmonary disease (COPO) (Tr.. at 455- 658, 756-812) and recurrent pneumonia (Tr. 455-658,659-703, 756-812,813-863,864-914,1011-1049,1050-1063).

## C. ALJ Findings

On April 20, 2012, the ALJ issued the decision. (Tr. 34). At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since July 28, 2010, the alleged onset date. (Tr. 26). At step two, the ALJ found that Plaintiff's chronic hepatitis C, right hip osteoarthritis post open reduction and internal fixation acetabular, right hip greater trochanteric bursitis, bipolar disorder, polysubstance dependence, adult antisocial acts, depressive disorder, migraines, cervicalgia, and alcohol dependence were medically determinable and severe. (Tr. 26). At step three, the ALJ found that Plaintiff did not meet or equal a Listing. (Tr. 27). The ALJ found that Plaintiff had the RFC to perform light work limited to occasionally bending, balancing, stooping, crouching, and climbing ramps and stairs and never climbing ladders, ropes, or scaffolds, never kneeling, and never crawling. (Tr. 30). Plaintiff was restricted from environmental hazards and limited to simple, routine tasks involving no more than simple, short instructions and simple, work-related decisions with few work place changes (1-2 step procedures), unable to work at production pace, and limited to only occasional interaction with coworkers, supervisors, and the public. (Tr. 30). A step four, the ALJ found that Plaintiff could perform past relevant work. (Tr. 32). At step five, in accordance with VE testimony, the ALJ also found that Plaintiff could perform other work in

the national economy. (Tr. 32). Consequently, the ALJ found that Plaintiff was not disabled and not entitled to benefits. (Tr. 33).

## V.     Plaintiff Allegations of Error

### A. The ALJ's failure to develop the record

Plaintiff asserts that the ALJ failed to develop the record by obtaining medical records only through January of 2011. The ALJ reviewed 191 pages of medical records from April of 2009 through January of 2011. (Tr. 262-454). The ALJ did not obtain any medical records from January of 2011 through April 20, 2012, the date of the ALJ decision. After the ALJ decision, Plaintiff obtained new counsel. (Tr. 17). Plaintiff's new counsel submitted an additional 667 pages of medical records that cover the period of February 2006 to September of 2012. (Tr. 455-1122). These records were neither requested nor reviewed by the ALJ. Defendant responds that the ALJ offered Plaintiff's counsel the opportunity to submit the records, and that the records would not have changed the ALJ's decision. (Def. Brief at 12-14).

> The Third Circuit has explained:
>
> The right to an unbiased ALJ is particularly important because of the active role played by ALJs in social security cases. *See Hess,* 497 F.2d at 840–841. ALJs have a duty to develop a full and fair record in social security cases. *See Brown v. Shalala,* 44 F.3d 931, 934 (11th Cir.1995); *Smith v. Harris,* 644 F.2d 985, 989 (3d Cir.1981). Accordingly, an ALJ must secure relevant information regarding a claimant's entitlement to social security benefits. *Hess,* 497 F.2d at 841. In *Hess* we reasoned that "[a]lthough the burden is upon the

claimant to prove his disability, due regard for the beneficent purposes of the legislation requires that a more tolerant standard be used in this administrative proceeding than is applicable in a typical suit in a court of record where the adversary system prevails." *Id.* at 840.

*Ventura v. Shalala*, 55 F.3d 900, 902 (3d Cir. 1995). "It is the ALJ's duty to investigate the facts and develop the arguments both for and against granting benefits." *Carmichael v. Barnhart*, 104 F. App'x 803, 805 (3d Cir. 2004) (quoting *Sims v. Apfel,* 530 U.S. 103, 111, 120 S.Ct. 2080, 147 L.Ed.2d 80 (2000)). This creates an affirmative obligation on the part of the ALJ to develop the record:

> We do not say that an administrative law judge must search out all the relevant evidence which might be available, since that would in effect shift the burden of proof to the government. But, these proceedings are extremely important to the claimants, who are in real need in most instances and who claim not charity but that which is rightfully due as provided for in Chapter 7, Subchapter II, of the Social Security Act.
>
> 20 C.F.R. § 404.927 (1973), in addressing the duties of the hearing officer, says in part:
>> '. . . The Administrative Law Judge shall inquire fully into the matters at issue and shall receive in evidence the testimony of witnesses and any documents which are relevant and material to such matters. If the Administrative Law Judge believes that there is relevant and material evidence available which has not been presented at the hearing, the Administrative Law Judge may adjourn the hearing or, at any time prior to the mailing of notice of the decision, reopen the hearing for the receipt of such evidence . . .'
>
> 20 C.F.R. § 404.926 (1973) says in part:
>
>> 'When reasonably necessary for the full presentation of a case, an Administrative Law Judge . . . may, either upon his own motion or upon the request of a party, issue subpoenas for the attendance and testimony of witnesses and for the production of

> books, records, correspondence, papers, or other documents which are relevant and material to any matter in issue at the hearing . . .'
>
> Our reading of the record confirms the administrative law judge's conclusion that the claimant's condition is puzzling, and we think that current medical evidence would have been extremely helpful in removing some of the doubts which the hearing officer and this court entertain.

*Hess v. Sec'y of Health, Ed. & Welfare*, 497 F.2d 837, 840-41 (3d Cir. 1974).

Here, the ALJ reviewed only 191 pages of medical records. *Supra*. Plaintiff subsequently submitted 667 additional records. These records were "reasonably necessary for the full presentation of the case." *Id.* For instance, they showadditional attempts at aggressive treatment, including with nerve block injections, physical therapy, medication, and an electrode nerve stimulator unit for home use from Mt. Nittany and injections from Dr. Martin. (Tr. 466, 468, 919, 923, 928-30). The ALJ reviewed few, if any, records related to Plaintiff's COPD and osteoporosis. (Tr. 455-658, 756-812). The record reviewed by the ALJ is particularly scant with regard to Plaintiff's physical, as opposed to mental, impairments, with ten pages of records from an April 2009 emergency room visit, eighty-seven pages of records from Geisinger Medical Center, and seven pages of orthopedic examinations and X-rays. (Tr. 263-73, 296-389). The Court cannot conclude that the ALJ would not have decided differently had the additional medical records been available.

The Court remands for the ALJ to consider the medical evidence from January of 2011 through 2012. Because the Court recommends remand on these grounds, the Court declines to address Plaintiff's other allegations of error.

### VII.     Conclusion

The Court finds that the ALJ's decision lacks substantial evidence because the ALJ failed to develop the record. Pursuant to 42 U.S.C. § 405(g), the decision of the Commissioner is vacated, and this case is remanded for further proceedings.

An appropriate Order in accordance with this Memorandum will follow.


Dated: March 31, 2015                              *s/Gerald B. Cohn*
                                         GERALD B. COHN
                                    UNITED STATES MAGISTRATE JUDGE